# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

JENNIFER ADAIR and
JACQUELINE ZIARKO,
individually and on behalf of others
similarly situated,

               Plaintiffs,

       v.                                      Case No. 08-C-280

WISCONSIN BELL, INC.,

               Defendant.

---

## DECISION AND ORDER

---

       Call center employees Jennifer Adair and Jacqueline Ziarko brought this action against their employer, Wisconsin Bell, Inc., on behalf of themselves and other similarly situated employees, who they claim did not receive pay for time spent performing necessary work tasks before and after their scheduled shifts and during their unpaid breaks, in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA").  Presently before the Court is the plaintiffs' motion seeking conditional certification of a collective class pursuant to Section 216(b) of the FLSA, and requesting approval of a proposed notice to be mailed to potential class members.  For the reasons stated herein, Plaintiffs' motion will be denied.


## I. BACKGROUND

       Wisconsin Bell provides local, long distance, and other communications services and products to residential and business customers throughout Wisconsin, and operates call centers in

Appleton, Pewaukee, Madison, and Milwaukee, Wisconsin. (Kopenski Decl., July 14, 2008, ¶ 3.) Jennifer Adair has been employed by Wisconsin Bell from 1997 to the present at its call center in Appleton and receives a base hourly wage, plus commissions and bonuses, for her work as a Service Representative. (Adair Decl., June 6, 2008, ¶ 2.) Her job duties as such involve making sales and providing service to customers, by taking incoming calls from customers who wish to add or change their service, or have questions regarding billing or equipment in connection with their service. (*Id*. at ¶ 3.) She is also required to sell AT&T equipment, services and upgrades. (*Id.*) Jacqueline Ziarko was employed by Wisconsin Bell from approximately September 1, 2003 to April 11, 2007 in the same Appleton facility. (Ziarko Decl., June 5, 2008, ¶ 2.) Though Ziarko held the title "Sales and Service Associate," she performed the same work as Adair. (*Id*. ¶ 3.)

Both plaintiffs assert that their scheduled shifts at Wisconsin Bell have usually been eight and one half hours in length, including an unpaid thirty minute lunch break. They have also worked approximately five hours of mandatory overtime a week during most weeks, and been paid for this mandatory overtime. (Adair Decl. ¶ 4; Ziarko Decl. ¶ 4.)[1] But in addition, they claim, they have routinely performed work before and after their shifts, as well as during meal and rest breaks, without receiving compensation for this additional work. (*Id*. ¶¶ 5-8.) Plaintiffs allege that this uncompensated time that they "and the similarly situated individuals spend or have spent on these required and unpaid work activities amounts to on average approximately thirty minutes per day per person," and typically resulted in overtime hours being worked. (Am. Compl. at ¶ 11.)

---

[1] Paragraphs four through ten of Adair and Ziarko's June declarations are identical for all material purposes. Thus, further citation to these paragraphs will refer to the declarations collectively.

Case 1:08-cv-00280-WCG    Filed 09/11/08    Page 2 of 21    Document 41

Plaintiffs filed this lawsuit on their own behalf, and on behalf of other call center employees they allege to be similarly situated, claiming that Wisconsin Bell violated the FLSA by not paying its employees "for some or all of their preliminary and postliminary work activities," and denying its employees the meal and rest breaks to which they were entitled. (Am. Compl. ¶ 8.) Plaintiffs identified potential class members as individuals who were, or are, employed by Wisconsin Bell in "customer service, sales, and similar positions" in its call centers, who performed the same or similar job duties as the Plaintiffs. (*Id*. ¶¶ 8-9.)

Plaintiffs have now moved for conditional certification of a collective class pursuant to Section 216(b) of the FLSA, and request approval of a proposed notice to be mailed to other potential class members. In addition, they have filed the "written consent" of Gayle Jeffries-Lamar, who worked for Wisconsin Bell as a Customer Service Representative from 1997 to 2007 in its Milwaukee call center facility, performing the same type of work as Adair and Ziarko. (Written Consent, Dkt. #14) (See also Jeffries-Lamar Decl., July 30, 2008.) Jeffries-Lamar indicates that she wishes to join the named Plaintiffs in their collective action. (*Id*.) Plaintiffs seek conditional certification of a collective class of all individuals who are, or were during the last three years, employed by Wisconsin Bell in any of its Wisconsin call centers, in any of ten "customer service, sales, and similar positions." (Pls.' Br. Supp. Mot. Certify 2.)

Wisconsin Bell contends, however, that "Plaintiffs' showing [] falls far short of even the lenient standard for conditional certification," (Def.'s Br. Opp'n Mot. Certify 10) because the plaintiffs have not made a sufficient factual showing that the putative class members were subject to a common policy or practice. Further, Wisconsin Bell claims, certification is inappropriate because the function, policies, and practices of its several call centers are significantly different from

3

one another, and plaintiffs haven't shown sufficient interest in the litigation on the part of putative class members. Wisconsin Bell argues that even if the Court were to grant plaintiffs' motion and exercise its discretion to facilitate notice to the proposed class, the proposed notice drafted by plaintiffs is deficient and inappropriate.

## II. LEGAL STANDARD FOR CONDITIONAL CERTIFICATION

The FLSA permits collective action "against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Unlike a typical class action suit under Fed. R. Civ. P. 23, where an unwilling plaintiff must "opt out" of the class, a class action pursuant to Section 216(b) of the FLSA requires employees or former employees to "opt in" to the class, by filing a written consent to join the action. *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982) (explaining differences between collective action under the FLSA and class action certified pursuant to Rule 23). District courts may, in their discretion, facilitate notice to potential plaintiffs to a FLSA collective action, to implement this "opt in" procedure. *See Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989); *Woods*, 686 F.2d at 580. "The critical inquiry in determining whether a court should exercise its discretion to authorize the sending of notice to potential plaintiffs is whether the representative plaintiff has shown that she is similarly situated to the potential class plaintiffs." *Austin v. CUNA Mut. Ins. Soc.*, 232 F.R.D. 601, 605 (W.D. Wis. 2006).

"Neither the FLSA, the Supreme Court, nor the Seventh Circuit has provided guidance on how the court is to determine whether the representative plaintiff is 'similarly situated' to the potential plaintiffs. However, other courts have adopted a two-step approach." *Mares v. Caesars*

4

*Entertainment, Inc.*, 2007 WL 118877, at *2 (S.D. Ind. 2007); *see, e.g.*, *Austin v. CUNA Mut. Ins. Soc'y*, 232 F.R.D. 601, 605 (W.D. Wis. 2006) (collecting cases applying the majority, "two-step," approach); *Veerkamp v. U.S. Sec. Assocs., Inc.*, 2005 WL 775931, at *2 (S.D. Ind. 2005); *Gambo v. Lucent Technologies*, 2005 WL 3542485 (N.D. Ill. 2005); *see also Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095 (10th Cir. 2001) (describing two-step method). During the first step, the court must determine whether the plaintiff has demonstrated a "reasonable basis" for believing that she is similarly situated to potential class members. *Austin*, 232 F.R.D. at 605. If so, notice may be sent to other potential members of the class. Then, typically upon a defense motion for decertification at the close of discovery, the court proceeds to step two, at which point it must determine whether plaintiffs who have opted in are, in fact, similarly situated. *See Kasten v. Saint Gobain Performance Plastics Corp.*, 2008 WL 2262076, *14 (W.D. Wis. 2008).

At this time, plaintiffs are at the first step, seeking initial conditional certification of the class and judicial approval of a proposed notice to potential members. "At the first step, courts have [] applied various analyses for determining whether potential plaintiffs are similarly situated." *Acevedo v. Ace Coffee Bar, Inc.*, 248 F.R.D. 550, 555 (N.D. Ill. 2008) (collecting cases). A few courts have held that a plaintiff may demonstrate a reasonable basis for conditional certification based solely on allegations in a complaint. *See Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 595 (S.D. Ohio 2002)(collecting cases). But "many courts require some factual support for a plaintiff's allegations." *White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 368 (E.D. Tenn. 2006) (adopting this approach and recognizing the "value of requiring some factual support for allegations of class-wide practices"); *see e.g. Austin*, 232 F.R.D. at 605 ("Courts have held that plaintiffs can meet their burden by making 'a modest factual showing sufficient to demonstrate that they and

5

potential plaintiffs together were victims of a common policy or plan that violated the law.'") (quoting *Young v. Cooper Cameron Corp*., 229 F.R.D. 50, 54 (S.D.N.Y. 2005)); *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 267 (D. Minn. 1991) ("Requiring a showing that there is some factual basis for the class allegations, however, hardly places an unreasonable burden on the plaintiffs."). In this case, plaintiffs have not disputed that they are required to make such a factual showing, and the Court has adopted this standard. (See Pls.' Br. Supp. 6; Order July 2, 2008, Dkt. # 27.) Although the burden they bear in making a factual showing in support of conditional certification is, as the plaintiffs note, "fairly low," (Pls.' Br. Supp. 5, citing *De Asencio v. Tyson Foods, Inc*., 130 F. Supp 660, 663 (E.D. Pa. 2001)) the "modest factual showing" standard "is not a mere formality." *Boyd v. Jupiter Aluminum Corp*., 2006 U.S. Dist. LEXIS 35654, at *9 (N.D. Ind. 2006).

Rather, it serves as an important and functional step in the certification process. Where the plaintiff has not made at least a modest factual showing that certification is appropriate, "[i]t would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated." *Freeman v. Wal-Mart Stores, Inc*., 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003). Moreover, the Seventh Circuit has observed that a plaintiff's discovery demands upon conditional certification may impose "a tremendous financial burden to the employer." *Woods v. New York Life Ins. Co.*, 686 F.2d 578, 581 (7th Cir. 1982). In *Woods*, the Court noted that when Congress amended the manner in which collective actions could proceed under the FLSA by adding the opt-in provision to section 216(b) through the Portal-to-Portal Act of 1947, Pub.L. 49, ch. 52, s 5(a), 61 Stat. 87, concern was expressed that this imposition of "tremendous financial burden" had

6

become a "general pattern." *Woods*, 686 F.2d at 581. *See also Dolan v. Project Constr. Corp.*, 725 F.2d 1263, 1266-67 (10th Cir. 1984), *overruled in part by Hoffman-La Roche v. Sperling*, 493 U.S. 165 (1989). Certainly litigation expenses have increased dramatically since 1947, and the financial burden to an employer is even greater today. As counsel for Wisconsin Bell explained during oral argument on the instant motion, the financial burden to an employer may be significantly increased by conditional certification of a collective action, because rather than limited to the experience of individual plaintiffs, discovery is expanded to class-wide policies and practices. Thus, although collective action and even court-facilitated notice is permitted under the FLSA, *Woods* 686 F.2d at 581-82, the legislative history of the collective action procedure, and Congress's expressed concern for the financial burden it may impose, supports the requirement of at least a modest factual showing that such collective action is appropriate before a class is even conditionally certified.

## III. ANALYSIS

### A. Common Policy of Payment Based on Phone System

Plaintiffs' theory as to how they and the putative class members together were victims of a common illegal policy or practice has shifted over the brief history of this litigation. First, in their amended complaint, plaintiffs claimed that they were similarly situated to the putative class members, because they were subject to a common unlawful policy under which Wisconsin Bell only paid its call center employees for time worked while they were logged into the phone system, rather than paying them for the hours they actually worked. Plaintiffs alleged that Wisconsin Bell maintained such a payment policy even though it "knowingly required" them to perform unpaid

7

work before and after logging into the phone system, including booting up and closing down computers and software programs, and performing "customer call-backs." (*Id*. at ¶ 9.)

Wisconsin Bell responded to plaintiffs' motion for conditional certification with unequivocal evidence that it does not calculate its employees wages based on the time they are logged onto the phone system. Although the company tracks the phone log to seek how closely the actual daily activities of each employee matches his or her scheduled shift, a metric the company refers to as adherence, the system does not function as a time-clock, and is not used for reporting time to payroll, or to determine how much an employee is paid. (Kopenski Decl. ¶ 9; Schaefer Decl., July 14, 2008, ¶¶ 7, 9; Smith Decl., July 14, 2008, ¶ 6.) Rather, Wisconsin Bell explained, its employees are paid on the basis of their scheduled shift or "tour," as adjusted for any reported incidental overtime, known as "exceptions," which an employee has documented, reflecting time he or she has worked more or less time than scheduled, so that payment may be adjusted accordingly. (Schaefer Decl. ¶¶ 6-11.)

In response to the evidence produced by Wisconsin Bell that its phone system does not operate as a timekeeping mechanism for payment purposes, plaintiffs offered an alternative theory of liability. Now, in place of their allegation that Wisconsin Bell maintained a common unlawful timekeeping system, plaintiffs assert that they thought they were paid based on the phone log and thus arrived early to boot up their computer and open the software applications needed to provide the customer service they were expected to give. (Supp. Decl. of Jennifer Adair ¶ 5.) Plaintiffs now contend that whether Wisconsin Bell employees were paid according to the time they were logged into the phone system or their scheduled tour, "it really does not matter. Either way, . . . they were still denied this pay for their pre and post shift work." (Pls.' Reply 2; Adair Supp. Decl., July 28,

8

2008, ¶ 8; Ziarko Supp. Decl., July 24, 2008, ¶ 8; Jeffries-Lamar Decl., July 30, 2008, ¶ 11 ("Even if Defendant was paying me based on my scheduled tour and not the time I actually spent on the phone, I still was denied the same pay." )

But, of course, it does matter whether the allegations of the complaint are true. It is to the complaint, after all, that the defendant looks for notice of the claim asserted against it. It is patently unfair to expect a defendant to respond to a theory of liability that shifts with each response. And it certainly matters whether statements made under oath in a declaration are true. Plaintiffs' initial failure to accurately set forth the Company's timekeeping and payment procedures, even though inadvertent, warrants concern over their other allegations.

More importantly, there is a significant difference between the allegation that the Company was using a mechanical timekeeping system that, by its very nature, failed to capture its employees' entire time at work and the allegation by two, now three, employees that they thought it was doing so and therefore regularly arrived a few minutes early and stayed a few minutes late so that their pay would not be docked. The first reflects a company-wide policy that would merit a collective response. The second reflects what may be no more than a misunderstanding on the part of a few employees. Unless far more widespread than the plaintiffs, it would not merit the kind of collective action plaintiffs seek to bring. Here, I conclude that even under their new theory of liability plaintiffs have failed to make the minimal factual showing that would warrant conditional certification of a collective class.

**B. Common Policy that Employees Must Take Calls Throughout Their Entire Tours**

Plaintiffs contend that they and the putative class members are similarly situated because they have been subject to a common policy under which they were "required to be open and

9

available to take a call" from the beginning of their scheduled tours to the end of their scheduled tours. (Pls.' Reply 8.) They were therefore required, they allege, to log into Wisconsin Bell's computer system and open numerous software applications before their tour began, log off their computer system and their software applications only after their tour had ended, and perform other work, such as completing order forms, during unpaid breaks. (*Id.*)

In support of this claim, Adair, Ziarko and Jeffries-Lamar have submitted declarations in which they state,

> Defendant expected me to be ready to take a call at the start of my tour, so I needed to open up the software applications beforehand or I would not be ready to take a call promptly when my tour was scheduled to begin. . . . Similarly, I could not log out of the computer systems during my tour because I had to have access to these systems until my tour ended.

(Adair Supp. Decl. ¶ 3; Ziarko Supp. Decl. ¶ 3; Jeffries-Lamar Decl. ¶ 5; see Adair Decl. ¶ 7; Ziarko Decl. ¶ 7.) Although the plaintiffs admit that their employer maintained an "exception log" for employees to record incidental overtime, they claim that they "understood" incidental overtime to only include time spent on incoming calls that went more than eight minutes past the end of their scheduled tour. (*See e.g.* Adair Supp. Decl. ¶ 6.)[2] Each further explains,

> I was not informed that I was supposed to record my daily pre-tour and post-tour activities such as logging in and out of our computer systems, finishing up calls that were less than eight minutes past the end of my tour, filling orders, or completing paperwork, all of which I regularly performed. Nor was I told that I would be compensated if I ended up performing these additional tasks during part of my unpaid lunch, which happened occasionally.

(*Id.*)

---

[2] Where Adair and Ziarko's supplemental declarations and Jeffries-Lamar's declaration are identical in all material respects, only one declaration is cited.

10

However, not one of the plaintiffs explains why this was her understanding, or why she believes Wisconsin Bell "expected" her to be ready to accept a call from the very beginning to the very end of her scheduled tour. The plaintiffs do not provide the Court with any factual support for the allegation that this was expected of them because of a state-wide company policy common to all members of the putative class. Conclusory allegations in the plaintiffs' reply brief to this effect (Pls.' Reply 8-9) are simply not sufficient to make even the modest factual showing required. *Freeman v. Wal-Mart Stores, Inc*., 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003) ("[U]nsupported assertions of widespread violations are not sufficient to meet Plaintiff's burden.") (citing *Haynes v. Singer Co., Inc.*, 696 F.2d 884, 887 (11th Cir. 1983)). Surely no further discovery should be required for the plaintiffs to explain the nature or source of the expectation they allege, or the factual basis of their own understandings of what was required of them. These are, or should be, matters that are within their own personal knowledge.

## C. Common Practice of Permitting Employees to Work Outside Scheduled Tours

Each plaintiff further avers that Wisconsin Bell did not restrict her from performing work outside her scheduled tours, and that her supervisor observed her performing work before and after her tours, as well as during unpaid breaks. (See e.g. Adair Supp. Decl. ¶ 4; Adair Decl. ¶ 11.) Even if overtime work is not required by an employer, but merely permitted, the FLSA may be violated if an employee is not compensated for such work she performs. *See* 29 U.S.C. § 203(g) (defining "employ" of an employee by an employer as "to suffer or permit to work"); 29 C.F.R. § 785.13 ("In all such cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without

11

compensating for them."); *see Levy v. Verizon Information Services Inc.*, 2007 WL 1747104, at *5 (E.D.N.Y. 2007).

Plaintiffs state that they have regularly observed co-workers "working off-the-clock," just as they do. (Adair Decl. ¶ 10; Ziarko Decl. ¶10.) They further aver, "[b]ased on my observations and conversations with my call center co-workers, I understood that we were all denied pay for the tasks we performed that I mention above." (See e.g. Adair Supp. Decl. ¶ 9.) Thus, I construe plaintiffs' submissions to allege that they and the putative class members have been subject to a class-wide practice of permitting uncompensated overtime.

### 1. Supervisor's Awareness

The plaintiffs' statements, however, do not provide factual support for the conclusion that Wisconsin Bell was aware of and permitted its call-center employees to perform work outside of their tours without pay on a widespread basis. Plaintiffs have provided no facts to suggest that supervisors, other than their own, observed employees working outside their scheduled tours and permitted such conduct. Alleged FLSA violations stemming from the enforcement decisions of individual supervisors, rather than a company-wide policy or plan are not appropriate for collective treatment. *See Salinas v. O'Reilly Auto., Inc.*, 2005 WL 3783598, at *6 (N.D. Tex. 2005) (holding that plaintiff had failed to make the minimal evidentiary showing required for conditional certification where the plaintiff's evidence showed only "that a handful of [defendant's] managers have committed possible FLSA violations in a variety of different ways," finding this insufficient to show that plaintiff and putative class members were victims of an company-wide policy or practice); *see Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1046 (N.D. Ill. 2003) (finding that evidence of a "payment practice concerning two out of fifty employees" did not make a modest

12

factual showing that the practice was the common policy or plan of the company). Furthermore, the plaintiffs do not claim that even their own supervisors observed anyone except the plaintiffs themselves performing work outside their scheduled tours.

Wisconsin Bell argues that the declarations are also insufficient because they do not provide any factual basis for the claim that the plaintiffs' supervisors knew the plaintiffs were not being paid for the unscheduled work they observed them perform. (Def.'s Br. Opp'n 13.) Although each plaintiff claims that her supervisor "was aware" that she was performing work for which she was not compensated, (Adair Decl. ¶ 11; Ziarko Decl. ¶ 11; Jeffries-Lamar Decl. ¶ 13) Wisconsin Bell notes that such testimony is inadmissible, because plaintiffs could not have personal knowledge as to their supervisor's mental states.

The courts, including those in this circuit, are split as to the whether a plaintiff may rely upon inadmissible evidence to make the requisite factual showing for conditional certification. *Compare Mares*, 2007 WL 118877, at *9 (requiring admissible evidence), and *Acevedo v. Ace Coffee Bar, Inc.*, 248 F.R.D. 550, 555 (N.D. Ill. 2008) (same), *with Molina v. First Line Solutions LLC*, 2007 U.S. Dist. LEXIS 47658, at *45, n.20 (N.D. Ill. 2007) (noting that hearsay may be considered during the first step in the certification process), and *Coan v. Nightingale Home Healthcare, Inc.*, 2005 WL 1799454, at *1, n.1 (S.D. Ind. 2005) (same). Wisconsin Bell urges the Court to follow the line of caselaw holding that admissible evidence is required, citing *Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 865 (S.D. Ohio 2005), *McElmurry v. U.S. Bank Nat'l Ass'n*, 2004 WL 1675925, at *10 (D.Or. 2004), and *Richards v. Computer Scis. Corp.*, 2004 WL 2211691, at *1 (D.Conn. 2004). (Def.'s Br. Opp'n 11.) Plaintiffs contend that evidentiary standards are more appropriately addressed at the second stage of the certification process, citing

13

*White v. MPW Indus. Servs., Inc.*, 236 F.R.D. at 368, in which the court explicitly rejected the reasoning of the *Harrison*, *McElmurry*, and *Richards* Courts, observing that at the first stage in the certification process, plaintiffs may be limited by the fact that discovery is still in its nascent stages. (Pls.' Br. Supp. 5-6.)

I find the requirement of admissible evidence to be the better approach. As noted above, even conditional certification may have significant consequences for parties to an action. I disagree with the *White* Court's conclusion that to require admissible evidence would defeat the purpose of a two-stage certification analysis. The requirement of a modest factual showing by admissible evidence that certification is appropriate does not replace further inquiry once opt-in plaintiffs have been identified, at which point a greater degree and specificity of evidentiary support is needed to stave off a motion for decertification. Rather, it provides a meaningful basis upon which the Court may determine whether to exercise its discretion with regard to a request for court-facilitated notification of potential class members.

But even though I agree with Wisconsin Bell that admissible evidence is required, I find that plaintiffs have asserted facts from which it may be inferred that their supervisors knew or should have known that they were regularly working "off the clock." They state that their supervisors regularly saw them come into work and perform work before their shifts, work during their meal and rest breaks, and work after their scheduled shifts. (Adair Decl. ¶ 11.) It is certainly possible that the named supervisors did not realize plaintiffs arrived a few minutes early or stayed a few minutes late to do work, or that they did not know precisely when plaintiffs were on break. It is also possible they were unaware of when they claimed overtime. Yet, the inference of knowledge advanced by plaintiffs is not unreasonable. Accepting this inference as evidence, however, still falls

14

short of establishing a common policy or plan that would merit conditional certification at this point. Even if the two supervisors identified in plaintiffs' declarations allowed other employees to perform work for which they were not compensated, this fact alone would not merit conditional certification and Wisconsin Bell's four separate call centers. For this reason, and those set forth above, plaintiffs' statements concerning their supervisors' observations fail to make the requisite factual showing that certification is appropriate.

### 2. Observation of Co-workers

That the plaintiffs observed other employees working outside their scheduled tours, assuming they knew their co-employees tours (they were staggered), is also insufficient to support a claim these workers were subject to an illegal practice under which they were not compensated for such work. In support of their allegation that they and the putative class members were subject to a common policy or practice in this respect, the plaintiffs claim that "our adherence, which was tracked closely by the Company, would decrease if we reported any exceptions to our schedule, which could result in discipline and deterred us from filing such exceptions." (Adair Supp. Decl. ¶ 7.) However, plaintiffs offer no explanation for why they believed decreased adherence would result in discipline; no evidence is offered of any discipline or even a threat of discipline under such circumstances. They do not indicate whether they feared such discipline because of a state-wide company policy or practice, the comments of a single supervisor, or their own unsupported speculation. Such a conclusory statement fails to demonstrate even a modest factual basis for finding the Plaintiffs and putative class members similarly situated.

Further, each plaintiff's reference to "my call center co-workers," suggests that their "observations" and "conversations" were within the same facilities in which they worked. As such,

15

these comments provide no evidence that plaintiffs were similarly situated to employees at other of Wisconsin Bell's call centers. *See Mares*, 2007 WL 118877, at *3 (S.D. Ind. 2007) (holding that a conclusory assertion that, "based upon conversations with others," plaintiff believed similar policies and practices were in effect at other facilities did not suffice to carry modest burden of showing sufficient similarity).

Plaintiffs nonetheless urge the Court to infer that in the normal course of their employment, they have become familiar with their co-workers' work habits and Wisconsin Bell's employment and pay practices. (Pls.' Reply 7.) They ask that the Court accept their own declarations that they "understood" from their "observations and conversations" that their co-workers were permitted to work overtime without pay as sufficient factual support of a common class-wide practice. In support of this approach, plaintiffs cite *White v. MPW Industrial Services, Inc.*, in which employees asserted that their employer's policy of refusing compensation for travel within a 75 mile radius was company-wide, and the Eastern District of Tennessee found it reasonable to infer this statement was based on personal knowledge, because "as employees of [the defendant], [declarants] would have learned during the normal course of their employment how the company operates and what the company's policies are." 236 F.R.D. at 369. Based in part on this evidence, the court found a sufficient factual basis to permit collective action. *Id*. at 371.

Plaintiffs also rely upon *Aguayo v. Oldenkamp Trucking*, in which the Eastern District of California found sufficient support for conditional certification where a trucker stated in his declaration that based on his "observations" of his employer's operations, other truckers were engaged in the same work as he was, and none of them were paid overtime wages even though they worked over forty hours per week. 2005 WL 2436477, at *4 (E.D. Cal. 2005). The *Aguayo* Court

16

acknowledged that the trucker's declaration did not identify the specific basis for his knowledge, but nonetheless concluded it was "reasonable that Aguayo would have spoken to his other co-workers, even during a short period of time, and learned who did what." *Id*.

I do not agree, however, that the factual support required for conditional certification is as minimal as the *White* and *Aguayo* cases suggest. Both the *White* and *Aguayo* Courts held it permissible for a plaintiff to rely upon inadmissible evidence in support of conditional certification, but for the reasons set forth above, I have rejected that approach. Though the evidence required at the first step of certification is less than that required at the second step, the *White* Court itself noted that if declarations in support of conditional certification are not required to be more probative than "bare allegations . . . the requirement of factual support would be superfluous." 236 F.R.D. at 369. In this case, plaintiffs essentially concede that their initial understanding as to how their employer kept track of their time was mistaken. They now allege they are similarly situated to the putative class members because of their employer's common practice of permitting unscheduled work without pay, but they have not made a modest factual showing that this was their employer's practice even as to themselves. Therefore, there is no factual basis from which to infer there was a class-wide practice.

I conclude that a plaintiff may not substitute her own judgment for the Court's by averring her "understanding" that her employer had a widespread improper practice, while shielding the Court's review of her conclusion and the sufficiency of the facts on which it is based by general assurances that it was formed by her observations and conversations with others. Here, in other words, the plaintiffs may not avoid the requirement of demonstrating to the Court a modest factual

17

showing of support for their claim that they and the putative class were subject to a common unlawful practice by vague assertions that they "understood" this to be true.

Accordingly, I find that the plaintiffs have not made a sufficient factual showing that they and the putative class members were similarly situated as victims of a common illegal practice at Wisconsin Bell of permitting employees to work outside their scheduled tours without pay.

### D. Common Policy of Time-Rounding

On August 20, 2008, the Court heard oral argument on the instant motion. During the hearing, plaintiffs advanced for the first time yet another theory as to how they and the proposed class are similarly situated, claiming that they and the putative class members have been subject to a common Wisconsin Bell policy concerning incoming phone calls which did not conclude until after the end of employees' scheduled tours. According to the plaintiffs, employees were only paid for their work completing such a call if the phone call continued for more than eight minutes past the end of the employee's tour. In response to this argument, Wisconsin Bell informed the Court that it has a practice of rounding its employee's time to the nearest quarter of an hour, such that an employee who works eight minutes receives pay as if she had worked for fifteen minutes. On the other hand, less that eight minutes of overtime is rounded down to zero.

As the Court noted during the hearing of August 20, 2008, the argument that the plaintiffs and putative class members are commonly situated because they were subject to Wisconsin Bell's time-rounding policy was never advanced in the briefs submitted in support of the plaintiffs' motion for conditional certification. For this reason alone, I reject it as a basis for granting plaintiffs motion for conditional certification. But even aside from the fact that it was not properly raised, the record as it now stands does not warrant granting plaintiffs' motion on this basis either.

18

As Wisconsin Bell notes, the practice of rounding to the nearest 5 minutes, or to the nearest tenth or quarter hour, is expressly approved by the FLSA regulations as long as it is used in a manner that does not result, over a period of time, in failure to compensate employees for all of the time they have worked. 29 C.F.R. § 785.48(b). Here, there is no evidence that Wisconsin Bell's policy has such a result. Although plaintiffs argue that the nature of the work plaintiffs perform results in a systematic under-reporting of overtime actually worked under this policy, their argument, without evidence, that it does so on a widespread basis is unconvincing. It is true that employees are expected to complete calls, even if they come in at the end of a shift, and the average call time is six minutes or less. Plaintiffs' argument that this evidence suggests the policy thus systematically favors the employer, however, does not take into consideration the time needed to complete paperwork associated with the call. If that time is added, the likelihood of employees regularly reaching the eight-minute minimum increases substantially. According to Wisconsin Bell, its employees, represented by their own union, are well aware of the way in which the policy works.

Plaintiffs' declarations state that they were not informed that they could report as incidental overtime the time they spent after their scheduled tours had ended finishing phone calls that exceeded their tours by less than eight minutes, filling orders, completing paper, or logging off their computers. (Adair Decl. ¶ 6; Ziarko Decl. ¶ 6; Jeffries-Lamar Decl. ¶ 9.) Each declares that she "understood incidental overtime to only include the time [she] spent on incoming calls that went more than eight minutes past the end of [her] scheduled tour." (*Id.*) But again, plaintiffs fail to explain where they obtained such an understanding, and they offer no evidence that there was a class-wide policy, practice, or plan that gave them such an understanding of which pre-tour and post-tour activities could be reported as incidental overtime.

19

Plaintiffs also claim the rounding policy is improper because:

> [i]f Defendant was actually rounding to the nearest quarter of an hour, they would pay Plaintiffs for fifteen minutes starting at 7.5 minutes worked. In other words, Defendant's 'rounding' policy moves the midpoint from 7.5 minutes to eight minutes. Shorting Plaintiffs [sic] wages if their work ended in this thirty-second period is a clear violation . . . .

(*Id.*) However, no plaintiff has even alleged that the rounding policy caused her to be denied pay for time she actually spent working more often than she was given pay for more time than she actually worked. Instead, plaintiffs clam that they were not informed that time spent completing paperwork, finishing calls completed within fewer than eight minutes after a tour, or logging out of the computer system could be reported as exceptions and counted toward the amount of incidental overtime they worked. (See e.g. Adair Supp. Decl. ¶ 6.)

Plaintiffs claim that "[s]ince the ultimate merits are not decided on a motion for conditional certification, the importance of the Company's 'rounding' practice at this stage is that Defendant does not dispute that its 'rounding' practice, like its other pay practices, is common to all Plaintiffs." (Pls.' Letter, Dkt. # 38.) But the fact that a company has some state-wide policies that apply to all its employees does not automatically permit any of its employees to bring a collective action representing a state-wide class. In order for collective action to be appropriate, a plaintiff and putative class members must be similarly situated with respect to the policy, practice, or plan that is alleged to give rise to the claims asserted against the employer.

Here, I find that the plaintiffs have not made a sufficient factual showing that they and the putative class members were similarly situated as victims of a common illegal rounding policy at Wisconsin Bell.

20

**IV.  CONCLUSION**

For the reasons stated herein, I conclude that plaintiffs have not made a sufficient factual showing that they and the putative class members are similarly situated.  Thus, I do not reach the parties' additional arguments.  The plaintiffs' motion for conditional certification of a collective action and request for court-facilitated notice is **DENIED**.

**SO ORDERED** this   11th   day of September, 2008.


s/ William C. Griesbach
William C. Griesbach
United States District Judge